**In re Gale HILDRETH and Ann Hildreth, Debtors in possession.**

**Bankruptcy No. 83–00817.**

United States Bankruptcy Court, D. Idaho.

Nov. 2, 1984.

John F. Bury, Spokane, Wash., and Cameron Phillips, Coeur d'Alene, Idaho, for debtors in possession.

Larry E. Prince of Langroise, Sullivan & Smylie, Boise, Idaho, for The Idaho First Nat. Bank.

## MEMORANDUM DECISION

MIKEL H. WILLIAMS, United States Magistrate.

Idaho First National Bank has filed several objections to the confirmation of Gale and Ann Hildreth's chapter 11 plan. The parties have agreed that the court may limit its consideration to creditor's objections 5, 6, 7 and 9. In objections 5 and 6, the bank contends that, because it is oversecured, 11 U.S.C. § 506 entitles it to the payment of interest under the plan at the rate set in two promissory notes on which the Hildreths (the debtors) are obligated. The debtors propose, in their plan, to pay 14½ percent interest. In objection 7, the bank argues that the debtors are unfairly discriminating against the bank because the debtors propose to pay other creditors the rate of interest set in their agreements. Finally, in objection 9, the parties request that this court interpret language of an order which provided that "[i]nterest accrual shall be deferred to date of plan confirmation, dismissal or conversion." The court will consider these objections seriatim.

"An allowed claim ... secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). A secured creditor may recover "interest on [its] claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose" to the extent that its collateral exceeds the value of its allowed secured claim. 11 U.S.C. § 506(b). The language of § 506(b) does not expressly limit its application to the accrual of interest, fees, costs or charges from the filing of the case until the effective date of the chapter 11 plan, or the disposition of the collateral. However, to confirm a chapter 11 plan, the debtor need only show that the present value of deferred payments to secured creditors equals the amount of the allowed claim *as of the effective date* of the plan. 11 U.S.C. § 1129(b)(2). To reconcile these two sections, § 506(b) must be read to establish the amount of the allowed secured claim as of the effective date of the plan which is then to be paid under the plan. If the claim is to be paid in deferred cash payments, the present value of these payments must equal the amount of the allowed secured claim. In summary, the creditor is allowed his contract rate until the effective date of the plan under § 506(b); after that date, he is entitled to the present value of his allowed claim at a discount rate under § 1129(b)(2).

There is much dispute as to what discount rate should be applied to determine the present value of deferred payments to be made under § 1129. Courts have applied discount factors based on a broad array of interest rates. *See generally Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647, 10 B.C.D. 1470 (11th Cir.1983); *In re Loveridge Machine and Tool Co.*, 11 B.C.D. 485, 36 B.R. 159

(Bankr.D.Utah 1983). *Cf. Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427, 9 B.C.D. 1140 (6th Cir.1982) (interest rate to be applied in a chapter 13 plan); *In re Mitchell,* 11 B.C.D. 1124, 39 B.R. 696 (Bankr.D.Oregon 1984). In both chapter 11 and chapter 13 plans, courts have used the contract rate of interest, the legal rate of interest, the rate of interest determined under 26 U.S.C. § 6621 of the Internal Revenue Code, the treasury bill rate, and the treasury bill rate with adjustments. *See In re Mitchell, supra.*

■ I am persuaded that the current market rate of interest for loans which are similar in term, quality of security, and risk of repayment or financial condition of borrower is the appropriate discount rate to be used to analyze the present value of deferred cash payments under § 1129(b)(2). *Accord, Matter of Southern States Motor Inns, Inc., supra* (applying a current market rate to a priority tax claim pursuant to § 1129(a)(9)(C) ). *See also Memphis Bank & Trust Co. v. Whitman, supra* (applying current market rate in a chapter 13 plan). The market rate will provide secured creditors with the present value of their claims as of the effective date. To use a rate based on the rates of short term government securities or on the prime rate, the rate which banks charge their best corporate customers, provides debtors with financing at rates they could not have received otherwise and fails to compensate secured creditors for risks which they are forced to take.

There is insufficient evidence in the record for the court to determine if, under this plan, the proposed deferred cash payments in fact equal in value the allowed amount of the bank's claim as of the effective date of the plan. Therefore, I will not approve the interest rate which the debtors propose to pay the bank under the plan. The parties will have to reach some agreement as to the appropriate interest rate, or an evidentiary hearing will have to be held to determine the market rate.

The bank also argues that the debtors are unfairly discriminating against it because the debtors propose to pay in this plan all secured creditors, except the bank, their contract rates of interest on their allowed claims. However, I have decided that the discount rate to be used in § 1129(b)(2) is not the contract rate which is used in § 506(b). Therefore, I will not consider whether the debtors have a valid reason for treating the bank differently; the bank may renew this objection, if it desires, when the debtors again present their plan for confirmation, if it then believes the debtors are discriminating against it.

■ The parties also request that I interpret language of an order authorizing the debtors to use cash collateral. This order was prepared by the debtors after the parties had stipulated to its terms. In part, the order provided that the debtors would pay the bank $800.00 per month, to "be applied on the principal sum of that loan, being approximately $58,140.05. Interest accrual shall be deferred to date of plan confirmation, dismissal or conversion." The debtors argue that this means that interest would accrue until the date of plan confirmation, dismissal or conversion and that the debtors could pay the accrued interest after confirmation over a period of time. Debtors propose to pay the bank approximately $10,718.00 which they expect to receive from the partial payoff of their vendor's interest in a land sales contract. The remaining balance of approximately $11,782.00 is to be paid in installments of $1,500.00 every six months plus interest at 14.5 percent. The bank contends that the order provided that interest would be payable on the date of plan confirmation, dismissal or conversion.

The language of the order does not specify the date on which the debtors were to pay the accrued interest. In the absence of language which even arguably specifies such a date, I hold that accrued interest is to be treated as part of the bank's allowed secured claim under § 506(b). That claim must be paid under the plan in accordance with § 1129; the bank must receive the amount of its claim on the effective date of

the plan or it must receive deferred cash payments, the present value of which equals the amount of its allowed secured claim.

I conclude that § 506(b) does not supply the appropriate discount rate to be used in a § 1129(b) present value analysis; the current market rate of interest for similar loans is the discount rate to be used in a § 1129(b) present value analysis. The parties will have to stipulate to, or present evidence of, that rate. The bank may renew its claim of unfair discrimination at that time. Finally, I conclude that the order allowing the debtors the use of cash collateral did not specify the date on which payment of accrued interest would be made.